UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DWAYNE JONES, JR.,**

    **Plaintiff,**

    v.                            Case No. 1:22-cv-347
                                        JUDGE DOUGLAS R. COLE

**AMANDEEP SINGH THIND,** *et al.***,**

    **Defendants.**

**OPINION AND ORDER**

Dwayne Jones was driving on the interstate when Amandeep Thind, a truck driver for Sunrise Freight Systems, crashed into him. Now, Jones sues them both. Discovery is ongoing, but two issues emerged.

First, Jones has twice subpoenaed Crawford & Company, which is the third-party administrator to Sunrise's insurer. But Defendants want to quash both subpoenas. Second, Defendants want to exclude Jones's proposed expert witness, Dr. John Burke. And, though the motion is fully briefed, Jones wants leave to supplement his response in opposition.

For the reasons below, the Court **GRANTS** Defendants' First Motion to Quash (Doc. 50), **HOLDS IN ABEYANCE** its ruling on Defendants' Second Motion to Quash (Doc. 65), **GRANTS** Defendants' Motion to Exclude (Doc. 55), and thus **DENIES** Jones's Motion for Leave to File (Doc. 64) **AS MOOT**.

**BACKGROUND**

I. **The Amended Complaint**[1]

Two years ago, Jones was driving his car in the center lane in a three-lane wide section of I-75N. (Doc. 11, #34). Thind was there too—driving a truck for Sunrise Freight Systems. (*Id.* at #34, 36). He was behind Jones but in the left lane. (*Id.* at #34). When Thind moved into the center lane, he crashed into Jones from the back. (*Id.*). Jones injured his "head, neck, pelvis, back, and other parts of his body," incurred serious medical costs, and developed permanent disabilities, chronic pain, and post-traumatic stress. (*Id.* at #37). He sued both Thind and Sunrise. (Doc. 11).

II. **The Motions to Quash**

As a part of discovery, Jones subpoenaed Crawford. Sunrise's insurer is Chubb Insurance, and Chubb uses Crawford as a third-party administrator. (Doc. 48, #170), In the subpoena, Jones seeks "[a]ny and all records or pictures of investigations pertaining to the motor vehicle accident," (Doc. 50-1, #182). Defendants moved to quash the subpoena, arguing that work-product privilege protects Crawford's records and reports. (Doc. 50, #176). Jones did not not respond. Defendants replied, noting that under this Court's Local Rules, Jones's failure to respond provided an independent basis to grant the motion. (Doc. 58 (citing Loc. R. 7.2(a)(2)).

Jones subpoenaed Crawford *again*. (Doc. 54). Though neither party submitted a copy of this second subpoena, from the briefing it seems Jones seeks the same or at

---

[1] Constantly adding "according to Jones" or "allegedly" or "apparently" makes for poor reading. All facts in the section describing the Complaint come solely from Jones. They have yet to be proven and may never be.

least similar information. Again, Defendants moved to quash, for similar reasons as the first time. (Doc. 65). This time, Jones *did* respond, arguing that work-product privilege does not apply, and even if it did, an "exception created by Fed. R. Civ. P. 26(b)(3)" makes the sought records discoverable. (Doc. 66, #331). Defendants replied, contesting those arguments. (Doc. 77).

### III. The Motion to Exclude and the Motion for Leave

Separately, Jones has retained an expert witness, John Burke, who opines on Jones's loss of earning capacity stemming from the accident. (Doc. 55-1). Jones has shown interest in becoming a truck driver and obtaining his Commercial Driver's License (CDL)—allegedly emailing with companies that would pay for CDL training programs and applying to jobs that would allow him to obtain his CDL. (Doc. 57, #237, #244–50). So in calculating his loss of earning capacity, Burke defines Jones's hypothetical pre-injury wage as the median wage of a commercial truck driver. (Doc. 55-1, #213). Objecting that this is too speculative, Defendants move to exclude Burke. (Doc. 55, #207–10). Jones responds that his pre-accident behavior, and in particular applying for jobs that would pay him to get his CDL, makes his prospective CDL career, and thus Burke's calculation based on that career, not speculative. (Doc. 57, #237–38). Defendants have since replied, largely reiterating their opening arguments. (Doc. 63).

Claiming that he has new evidence relevant to the Motion to Exclude, Jones moves for leave to supplement his response in opposition to that motion. (Doc. 64).

3

Defendants argue that the evidence is unverified and is anyway futile. (Doc. 68). As the time for reply has passed, this motion too is ripe for review.

The parties particularly emphasized the value of this motion being decided early. In a March 20, 2023 telephone status conference, "[t]he parties advised that a ruling on the motion to exclude [plaintiff's] expert would allow them to move towards potential resolution of the matter." (3/20/2023 Min. Entry).

## LAW AND ANALYSIS

### I.  The First Motion to Quash.

When a party fails to timely respond to a motion, the Court can treat it as unopposed. *See Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 265–66 (6th Cir. 2009). Per this Court's local rules,

> [a]ny memorandum in opposition shall be filed within twenty-one days after the date of service of the motion. Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees.

Loc. R. 7.2(a)(2) (S.D. Ohio Jul. 25, 2022). And though "[a] party generally lacks standing to seek to quash a subpoena issued to a nonparty … a party has a right to object to a subpoena if he/she has a claim of privilege with respect to the materials being sought by the subpoena." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 n.1 (S.D. Ohio 2011) (citing *Hackmann v. Auto Owners Ins. Co.,* No. 2:05-cv-876, 2009 WL 330314, at *1 (S.D. Ohio Feb. 6, 2009)).

Defendants moved to quash Jones's first subpoena to Crawford on February 14, 2023, claiming work-product privilege. (Doc. 50). Jones never filed a response in

4

opposition. So the Court will treat the motion as unopposed. Thus, the Court **GRANTS** Defendants' Motion to Quash (Doc. 50).

## II.     The Second Motion to Quash.

That brings us to the second subpoena, which Defendants also seek to quash. The party seeking to quash a subpoena bears the ultimate burden of proof. *Hendricks*, 275 F.R.D. at 253. One reason to quash a subpoena is when it calls for the disclosure of "things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

The Court cannot decide whether this principle justifies quashing here without more information. To determine whether a document was prepared in anticipation of litigation, a court must ask:

1. "whether a document was created because of a party's subjective anticipation of litigation, as constrasted with an ordinary business purpose, and"
2. "whether that subjective anticipation of litigation was objectively reasonable."

*United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006).

"A factual investigation of an insurance claim by an insurance company is generally seen as within the ordinary course of an insurance company's business, but whether the [work-product] doctrine applies in a given case is a fact-dependent inquiry." *Exec. Ambulatory Surgical Ctr., LLC v. Allstate Fire & Cas. Ins. Co.*, No. 21-10985, 2022 WL 469081, at *7 (E.D. Mich. Feb. 15, 2022). In this context, courts in other circuits and at least one district court in this circuit ask "whether the

5

documents were prepared primarily for the purpose of adjusting the claim or primarily in anticipation of litigation." *Cowie v. State Farm Fire & Cas. Co.*, No. 1:07-cv-63, 2007 WL 2077619, at *2 (E.D. Tenn. July 17, 2007) (collecting cases). And to answer that question, "[f]actors a court should consider include who prepared the documents, the nature of the documents, and when the documents were prepared." *Id.* Ultimately, the Court must satisfy itself that the "'driving force' behind the preparation of these documents" was not to "mak[e] coverage decisions" but rather because of anticipated litigation. *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *Roxworthy*, 457 F.3d at 595). Often, in these sort of cases, that means "whether the documents at issue here were in fact prepared in anticipation of litigation can only be determined from an examination of the documents themselves and the context in which they were prepared." *Id.* So the Court will **HOLD IN ABEYANCE** its ruling on Defendants' Second Motion to Quash (Doc. 65) until it can review in camera Crawford's investigative report, as well as other documents not sought by the subpoena, namely:

- Chubb's contract with Crawford concerning the investigation, and
- Sunrise's insurance policy with Chubb.

Sunrise is directed to provide those documents for the Court's in camera review no later than June 2, 2023. If Sunrise lacks access to Chubb's contract with Crawford, Sunrise shall so inform the Court.

### III. The Motion to Exclude.

Separately, there is the motion to exclude expert testimony. Let's start with the basics of expert testimony. A court will admit an expert's opinion into evidence if it meets three requirements:

1. "[T]he witness must be qualified by knowledge, skill, experience, training, or education."
2. "[T]he testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue."
3. "[T]he testimony must be reliable."

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (internal quotation marks omitted) (citing Fed. R. Evid. 702). Defendants confine their challenge to the last of those—they dispute the reliability of Burke's testimony.

The Federal Rules of Evidence provide trial courts "general standards to assess reliability," including:

- "whether the testimony is based upon sufficient facts or data"
- "whether the testimony is the product of reliable principles and methods, and"
- "whether the expert has applied the principles and methods reliably to the facts of the case."

*Id.* at 529 (internal quotation marks omitted). In determining "whether the testimony is based upon sufficient facts or data," the Court must "determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529–30.

Now, let's turn to the specific type of testimony that Burke intends to offer—loss of earning capacity. Under Ohio law, "[a] plaintiff claiming lost earning capacity must offer sufficient proof of (1) future impairment and (2) the extent of prospective

7

damages flowing from the impairment." *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 726 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Eastman v. Stanley Works*, 907 N.E.2d 768, 776 (Ohio Ct. App. 2009)). As a general matter, the starting point for a plaintiff's earning capacity is based on their actual earnings at the time an accident occurs. "Departures from actual pre-injury earnings must be justified and cannot be unduly speculative. Like all expert testimony, an expert witness's calculations of future earning capacity are inadmissible under Federal Rule of Evidence 702 if based on unsupported speculation." *Id.* at 727 (internal quation marks omitted) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589–90 (1993)).

How do we determine when an expert justifies his calculation and when he unduly speculates? The expert "should take into account factors such as the plaintiff's age, employment record, training, education, ability to work, and opportunities for advancement." *Id.* (citation omitted). "Further, an expert may reasonably depart from historical earning patterns in light of changed circumstances that occurred prior to the injury but were not yet reflected in the plaintiff's actual salary," such as "a change in family responsibilities and the acquisition of a new set of skills." *Id.* Notice, however, that the listed factors do not include a plaintiff's unsupported assertions about their intent to change their occupation.

Burke calculates Jones's pre-injury earning capacity using the median wage for commercial truck drivers. (Doc. 55-1, #213). Jones was never a commercial truck driver, does not have a CDL, and in fact has no professional driving experience at all.

8

(Doc. 68, #338). Jones responds that he showed interest in applying for jobs that would allow him to obtain his CDL, and wants to offer evidence to that effect as proof that he would have been a commercial truck driver. (Doc. 57, #237–38). That's not enough.

Start with this—Jones *applied* to be a delivery driver for a company that *did not* require a CDL. True, the company offered a benefit under which it would pay for employees to get CDLs. (Doc. 57, #238). But the job that Jones applied for did not require such licensure, so his application for that job offers scant evidence substantiating his alleged intent. Coupled with that, there's no evidence in the record that Jones was likely to be hired for the job to which he had applied—indeed, he had no work history as a driver of any kind. (Doc. 68, #338). Unlike in *Andler*, where the plaintiff already acquired new skills, here Jones and Burke want to depart from Jones's actual pre-injury earnings based merely on his intention to acquire skills. That doesn't work. Because Burke's testimony about Jones's loss of earning capacity is too speculative, the Court **GRANTS** Defendants' Motion to Exclude (Doc. 55) that testimony. Since no one has (yet) questioned Burke's expertise, he should feel free to offer alternative opinions if he wants, assuming those opinions are timely disclosed under the Amended Calendar Order here. (Doc. 76).

**IV.  The Motion for Leave.**

The Court "does not have to accept every filing submitted by a party." *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp., a Div. of Reed Elsevier Grp., PLC*, 463 F.3d 478, 488 (6th Cir. 2006) (citing *Jones v. Northcoast Behav. Healthcare Sys.*, 84

9

F. App'x 597, 599 (6th Cir. 2003)). Courts can refuse to accept a supplemental brief when there is "no prejudice" to the moving party in doing so, *see id.* at 489, and when the moving party offers evidence that was available to him "in the exercise of reasonable diligence when the original briefs were filed," *cf. Valassis Commc'ns, Inc. v. News Corp.*, No. 13-14654, 2015 WL 13050049, at *1 (E.D. Mich. Dec. 23, 2015) (internal quotation marks omitted) (citing *Harshaw v. Bethany Christian Servs.*, No. 1:08-cv-104, 2010 WL 610262, at *1 (W.D. Mich. Feb. 19, 2010)).

There is no prejudice to Jones in refusing to accept his motion for leave to file a supplemental brief. In his motion, he describes new evidence relevant to Defendants' motion to exclude. Namely, he says he will offer additional evidence that he applied to a route delivery driver position for Home City Ice. He offers no explanation why this evidence is only available now. And it seems to the Court that it could have been easily obtained before now.

More importantly, as described earlier, that evidence does not make Jones's likelihood of becoming a commercial driver any less speculative. Because the new evidence, as described, does not change the outcome of the Motion to Exclude, the Court **DENIES** Jones's Motion for Leave (Doc. 64) **AS MOOT**.

## CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' First Motion to Quash (Doc. 50), **HOLDS IN ABEYANCE** Defendants' Second Motion to Quash (Doc. 65), **GRANTS** Defendants' Motion to Exclude (Doc. 55), and thus **DENIES** Jones's

Motion for Leave to File (Doc. 64) **AS MOOT**. Sunrise shall provide the additional materials described above by email for the Court's in camera review.

      **SO ORDERED.**

<u>May 23, 2023</u>
**DATE**

                                             **DOUGLAS R. COLE**
                                             **UNITED STATES DISTRICT JUDGE**